Good morning, Your Honors. My name is Aaron Lawson. I represent the Plaintiff Appellant, Saman Mollaei, in this case. I, you know, in my experience, when we get an order like the one you all entered on the docket last week, I can read the writing on the wall, so let's just begin by talking about certifying this case to the California Supreme Court. Well, Counsel, you shouldn't interpret that more than it is. I mean, some of us might be interested. So long as one person is interested in it, that's why it's sent out. Don't assume that anyone or the majority or anything believe other than we just be prepared to address it. Well, I think it provides a useful way to begin the argument, and we'll, of course, get to the actual merits of the case as well. Our bottom line is we don't oppose certifying this case to the California Supreme Court. You know, at the end of the day, this case involves interpreting a relatively uncomplicated statute, and that's a big part of the reason why we didn't seek certification in our briefs, because this Court is obviously equally capable of applying the tools of statutory construction to this law. Perhaps we are capable, but the question is, should we? Well, so to address the particular requirements in Rule 8.548, I think you would be undertaking this task in the absence of any controlling authority from the California Supreme Court interpreting this law, and we do think that the interpretive issues presented by the statute would be dispositive of the appeal. So, you know, just as a basic matter, we think the requirements are met, and it would be, I think, as I said, I think this, we have a very strong case on the text of this law, and this is a pretty straightforward case of statutory interpretation. But I also do believe, and, you know, we filed this case in California in part because these are, I think this case presents issues of pretty public interest in California to the public, to the legislature. So it would be an appropriate case to seek the California Supreme Court's guidance as well. So this may jump a bit to the merits of the issues, but it seems to me that we don't know very much here about what the consent would have been, like what the lease agreement says, what the manual says about what is expected, how this GPS works. Wouldn't it be more helpful for the California Supreme Court to evaluate whether this statute creates a cause of action in this type of situation with more information about the facts of consent and how these GPSs work? Well, on consent specifically, I think the case is probably in a posture where the California Supreme Court can pretty appropriately consider it because the consent is an affirmative defense. I think that your complaint as pled addresses the concern I think that Judge Friedland is raising, which is there are these various elements. The statute talks about use. It talks about what a, you know, if the TCU is a tracking device, and then obviously there's an exclusion for consent. So maybe you can, because we're at a 12B6 posture, is there enough in the complaint as alleged in your view to satisfy a claim under this statute? Absolutely, especially if we're talking about the proposed amended complaint. But I believe both of the complaints are good in this case, in part because, as I think in answer to your question, Judge Friedland, consent is an affirmative defense. I don't think we need to be pleading around it at this stage of the case. It pretty clearly functions as a justification for engaging in otherwise prohibited conduct. And I think under pretty longstanding rules of construction, the party that wants to justify its conduct has to set out the facts that provide that justification. So we see this as, pretty clearly, as an affirmative defense. So it's not something that we can really consider at this stage. On the rest of the statute, is this, does this device reveal its location by electronic signals? Yes. Is it attached to the car? Yes. I think that is in the complaint as well. Is it used by Autonomo to track the location or movement of a person? Yes. I guess what I'm wondering, though, is, so you may, we may agree with you, that you have alleged enough to get over the motion to dismiss. Whether that's going to tell people in California whether cars can be sold like this, though, I think depends on more about what consent might actually be on the ground. I mean, you could have pled enough, but for us to answer the question about whether a car like this can be sold in California, I think we might need more facts about how they're sold, and what people know, and how they work. And so, I'm just not sure at this posture, asking the California Supreme Court to tell us whether this car can be sold in California, is that possible? Like, maybe we need more. Well, I think one thing the California Supreme Court could tell us is, what does it mean to consent to the use of an electronic tracking device with respect to a vehicle? I think that is a bit of a contested question here. Or what does it mean to be attached? Well, I mean, that, that, that's a question, isn't it? That is certainly the big question presented by the briefs, and I'll get to that in a second, but I wouldn't have any issue with developing the record on consent, and what this looks like for different, for lessees, for buyers. I think that would be entirely appropriate. On, on the issue of attached, right, I, I think this issue, or this appeal, is a little bit unusual, because everyone agrees that, in some sense, this device is attached to the car, and, right, as we explain, it's screwed on to the car. So, really, the interpretive issue is, do we apply, sort of, an ordinary understanding of the word attached, or a narrower, more bespoke understanding of this word? And, you know, the principal argument offered in support of this narrower view of the statute is this idea that, well, and are we, are we at the, at the Ninth Circuit going to define what that is, and not let the California Supreme Court figure that out? Well, I, so this is why I do believe it's an appropriate case to seek the California Supreme Court's guidance. We have cases every day where we are interpreting State law that affects many people in a particular State that, you know, in our cases that talk about certification, you can meet the standard under the statute. It doesn't necessarily mean that our Court is certifying questions to the Supreme Court on every situation or instance where we're interpreting State law. And I, and I think what I hear you saying is that this is a straightforward issue of statutory interpretation. What the District Court did here really is an anomaly in terms of sort of taking some of these terms, like attach, that are defined, you know, pretty straightforwardly in even dictionary terms. Attached means connected or joined to something. And it has created an interpretive outcome that isn't necessary. So if we were to certify this question to the Supreme Court, it seems to me that it would make sense first to look to see whether this is something that requires, is the statute ambiguous on its face? Is there something that is going to require the highest court of the State to weigh in on? Because we're otherwise interpreting statutes in States every day. That's what our Court does. No, you're preaching to the choir here. There's a reason we didn't ask for certification, right? We do think this is pretty straightforward. And I understand that you all also want to respect the time and energy of the California Supreme Court. I think just as a basic matter, the very bare requirements are met. And that's the point that I wanted to make there. I think the bare requirements are met. And it's an issue of public interest. The bare requirements are met in many cases. Yes. And so the reason we don't oppose, you know, beyond that is that we do think this is an issue that's of some interest to the Californian public and the Californian legislators. And, you know, I want to get back to the issue of attached, but I will discuss this briefly is in terms of the public, first of all, right, we have a public that is twice in the last five years passed very sweeping privacy initiatives that protect, among other things, geolocation information. So it's something that the public is generally interested in. About three or four months ago, right, we had a what I would call a bombshell New York Times article that discussed how information generated by similar devices on General Motors cars was being shared with Lexus Nexus and then with insurance companies in a way that tended to raise insurance rates. And that caused a bit of an outcry. I don't think it was. You think the statute is ambiguous? I do not. I really don't. I think that this device is pretty clearly attached. You know, if you were to remove it, you would describe yourself as detaching it. You know, it is connected with screws. I understand that. Counsel, but if you look at the legislative history, is that what it tells us? Is that what the legislative legislators thought here? I think the fairest read of the legislative history and one that really takes into account what the legislature ultimately did. Why would we go to the legislative history if the statute is unambiguous? I don't think you would. But in the instance that you do think it is ambiguous, I think that the best way to read the legislative history is that they were, the legislature was alerted to the dangers, the broader dangers of electronic tracking by this private investigator scenario that my friends highlighted in their brief. The legislature took that scenario and police surveillance, of course, as we describe in our briefs. But ultimately realized that this was a much broader issue and regulated much more broadly. So if you look at Section 1 of the bill that was ultimately adopted, this is not in the California Penal Code, but the bill that was ultimately adopted. It says electronic tracking without your knowledge violates a reasonable expectation of privacy. Right? It's not electronic tracking by a particular class of people. It's just electronic tracking without your  The idea of like a built-in GPS in a car, it existed at that time that this was written, but it was very rare. It was rare. So what do we do if we think that the legislature didn't even have this in mind? Like if they wrote this language, but they didn't even have this in mind, do we, does that weigh in favor of saying this is covered or against saying this is covered? I think it doesn't weigh either way. I think at the end of the day, the question is, is it attached? Right? And I think what the district court was attempting to do, and I think it sort of engaged in a category error here, is give this word some meaning. It said we have to draw lines somewhere in order to give this word meaning. And I grant the legal premise this word has to have some function, but I don't think that function is to distinguish between things attached at different times or attached by different people, as the district court thought. I think, you know, the only question posed by the word attached is, is it attached? Right? We don't live in a world where every single device that might be used to track someone is going to be attached to a vehicle or other movable object. And of course, it's not really for our court to contemplate what the, or to make a ruling based on what the legislature might not have been thinking about if we interpret the statute, which is what courts do, and the legislature says that's not, we hadn't thought about that, that's not what we meant, we intended it to be narrower, then the legislature will fix the law. And I can see, first of all, you guys are going to have a great conference after this argument. But I think as the second point about why this issue is important to the public in California, as you're considering whether to certify it, the legislature has been considering what you might call connected car issues, privacy issues connected to, connected to, that relate to connected cars, right? I think there was a bill passed last year that dealt with cameras in cars. There has actually been a bill introduced in both sides of the California legislature in this session that would require manufacturers to give the driver the ability to turn off technology that allows a third party to track the car. So this is something they're thinking about, and I think as they do, they probably deserve a definitive answer on what California law already requires. And this court, I think, is capable of giving them that answer. It's also something they can fix if you get it wrong, but to the point about certification, the only body that can truly give them a definitive answer is the California Supreme Court. Do you know, and this is maybe a little bit of a tangent, but I'm curious, the cases that the district court cites, which are other district court cases, in the Moreno case and also the Google location litigation, those related to phones and not vehicles, but they're, you know, 2017 cases. Has the legislature done anything to address those decisions to clarify whether or not this particular statute would cover mobile phones versus vehicles? To my knowledge, it has not. And I would add, it's not just mobile phones, but software, right, in those cases. And I think that makes a big difference because we are talking about hardware here. But to my knowledge, the answer to your question is no. And if there are no further questions at this time, I'd like to reserve the balance of my time for rebuttal. Great. Thank you. Good morning, Your Honors. Roman Martinez for Autonomo. May it please the Court. Plaintiff is advancing a novel theory here under which my client is criminally liable and owes up to $10 billion, maybe more, because it received location data from the kind of standard devices that are built into virtually every car that's sold in the United States today. That's wrong for multiple reasons. We think that the reason that we focused on the most in our brief is that the BMW installed TCU device here doesn't satisfy the statutory definition of electronic tracking device. That definition contemplates two distinct things. One, a vehicle, and two, something separate that's attached to the vehicle. Where do you get that something separate attached to the vehicle? I understand that the District Court found on page 5, which is Article 28, that the device must be a separate device that is attached or placed onto an automobile by the alleged wrongdoer. And in my view, the sort of must-be-a-separate device by the alleged wrongdoer are words that are not found anywhere in the statute. And after this determination, the Court has no citation. Right. So I think there are two different points here, which we've made both arguments. One point is that the device has to be attached to the vehicle, and then there's the separate question of whether it has to be attached by the wrongdoer. I think the District Court ruled for us on both of those theories. Okay. Let's talk about each of those. So on the attach piece, you're saying not just attach. You're saying a separate device. Attached to the vehicle is the key thing. And that comes from 637.7d. And just to look at that, that's the definition of electronic tracking device. It says any device attached to a vehicle. So you have device attached to a vehicle. I agree with you. We're on the same page.  But you're using the word separate device. And the District Court used the word separate device. And I'm trying to figure out where that comes from, because it's not in the  I think it comes from the language that I just read. Because if the device is attached to the vehicle, that presumes that you have something that is the vehicle, and that you have some other thing that is not that vehicle that's then attached to the vehicle. And I think the logical conclusion from that is that the other thing is separate from the vehicle. If it were part of the vehicle already, then it wouldn't be attached to the vehicle. And the steering wheel attached to a vehicle? No. The steering wheel is part of the vehicle. It's built into the vehicle. And I think if you go to buy a car, and you say, I'm buying a vehicle, what you think you're doing is you're buying a thing that comes. And part of what you bought, part of the vehicle you bought, is the steering wheel. You don't think, I'm buying a vehicle, and attached to that is a steering wheel, the backseat, the windows, the lights, et cetera. So you're saying that any part of a vehicle, even one that is attached, when you sell the vehicle, then it becomes a component of the vehicle, as opposed to being attached. I think what I'm, to put it in my own terms, what I'm saying is that there's a thing that is, that consists of the vehicle. The vehicle consists of certain components, and yes, they're attached, but they're attached to each other. They're not attached to some separate thing that is the vehicle. So how do you get around sort of just the plain dictionary definition of attached, which is connected or joined to something? We don't have to get around that, because we concede that the vehicle's components are attached to one another. The debate here really isn't about attached. The debate here is about what counts as the vehicle. And so if we are right that the TCU device, like the steering wheel or the tires, are part of the vehicle, then that means that the TCU is not attached to the vehicle, because it's already part of the vehicle. And that's our core statutory argument. That's why the attached, the kind of question of attached is not in dispute here. We, I think everyone agrees what attached means. The question is whether you have a device that is built into the vehicle, whether that counts as being attached to the vehicle. And I think the problem that the other side has on that issue is that they have no real account of what counts as the vehicle. They don't have a theory. Under what I understand their view to be is like if it's removable. But what about the 12B6 stage? So all they need to allege is that it's attached to the vehicle, which they do. So I understand that maybe what you're getting at is that ultimately there's going to be some, you know, expert testimony or other evidence to suggest whether or not it's truly connected or joined to the vehicle. But I don't understand why, if on the face of the complaint, or the amended complaint, they've alleged that it, you know, they really just repeat the language in subsection D, why isn't that enough? Our argument is not about the facts. Our argument is about the legal meaning of the term vehicle here and whether we are right that a built-in component of the vehicle is not attached to the vehicle. Their theory is that as a matter of law, as I understand it, any vehicle component also, any part of the vehicle also counts as being attached to the vehicle, so long as it's like removable. But obviously there are plenty of parts of the vehicle that you can remove and still operate the car. You know, if I took the light, the reading light in the back seat of my car out, I could still operate the car, but obviously the reading light that's, you know, built into the roof of the back seat of my car is part of the vehicle. Counsel, can you address the certification question and what your position is? Yeah, so we think that, and I'll give you a slightly self-serving answer, but let me play it out. I think that we think we have the most straightforward reading of this statute, especially on this question of the distinction between the vehicle and something attached to the vehicle. Let's assume that that's up for debate. If it's close, then I think we win under the rule of lenity because it's a criminal statute that if it's ambiguous, if there are two, you know, reasonable understandings of the statute that are in close equipoise, then we think that the rule of lenity, this is a criminal statute under which people like my client were potentially liable to go to prison for six months if they violate the statute. And under California law, the rule of lenity means the tie goes to us. So you're saying that the statute is unambiguous. Your friend on the other side says the statute is unambiguous. So given that you think you win under the plain language of the statute, do you think certification is appropriate? I think if you agree with us on the plain language, if you lean our way on the plain language, absolutely not. You have no need to certify for the reasons that I think you laid out earlier. I think if you think it's close, then I think you have to apply the rule of lenity, and then we win under the rule of lenity. Again, no need to certify. If you're leaning in their direction on this, there's the self-serving part. This isn't self-serving. But if you are leaning in this, so I'll put it on the table. It is a little bit self-serving, but I think it's self-serving for a good reason, which is that if you are leaning in their direction, a ruling in their favor is going to have very significant practical consequences for the way automobiles are regulated and sold in California, because it's going to create this criminal liability that would potentially extend to manufacturers and to companies like my client. It would create massive civil liability. It would open the floodgates to litigation. And it would be the same thing if you were  So this gets back to my consent question. That's only true if, I mean, they may be able to get past a motion to dismiss. But if you can show that everyone who buys a car with a GPS understands that there's data and it goes to cell towers and it's going to be shared and maybe you can show that the manual says it's going to be shared. I don't know what you can show because it's not in the complaint. Whatever you're going to say about that, if you can show what you want to show, that everyone understands how this works, then you're not going to have this huge liability. I think if they are right both about the attached to the vehicle question, the first argument, and they're also right about the affirmative defense issue with respect to consent, then that's — then it's still going to have a massive practical effect, because any plaintiff is going to be able to file a lawsuit and survive 12b-6 without having to say anything about consent. And so there may be litigation costs, like, until the — yes, there may be litigation  Which are very significant. But that's not going to end the industry. You could have a litigation that talks about what's in the manual and you'll get an answer or something. Maybe, Your Honor, but when you're talking about the kind of liability that's at issue here, and again, with my client, it's literally a $10 billion case that they're millions of cars and it's $5,000 per car. I mean, that is — even if we're just talking about people filing lawsuits and getting passed a motion to dismiss, that's a big deal. And I think — And alternatively, isn't this also the sort of where I think the legislature would come in if it, in fact, intended not to have such a sweeping, broad statute that criminalized this conduct? Wouldn't it respond by saying, wait a minute, you know, our plain language might not have been exactly what we intended it to be? I think that the idea of the legislator coming in is a consideration that supports us for two reasons. Number one, this statute was passed a long time ago before this kind of technology was as ubiquitous as it is today. There's no reason to think that the legislature actually wanted this result. And I think in a context in which the consequences of their reading is going to expand liability, including criminal liability, we think that the legislature should speak first if they want to go in that direction instead of having to correct a decision. And the second thing is, we're operating now against a backdrop — Well, how do they do that, given that we have ongoing litigation? Well, I think what they could do is they could pass a statute along the lines of what my friend on the other side was suggesting. The legislature is well aware of privacy issues. They're debating legislation that operates in this general sphere, so they could clarify what regime they want to apply to the new regime of technology. I think the other thing, though, with respect to the legislative backdrop and with respect to certification is, the backdrop that we're operating under now, there's no case that's directly on point except maybe the Shapiro case, which I think is pretty good for us, although it's not 100 percent on point. But the train of decisions in the privacy space all support us here. I mean, Shapiro is a decision that adopts essentially our reading of the attached-to-a-vehicle requirement, and it says that if the thing that's being alleged to be the tracking device is part and parcel of the vehicle, then it doesn't count as attached to the vehicle. So you already, and that's a California trial court decision, not binding, but I think informative about how the California courts are looking at this. It also sends a signal to the legislature. If the legislature didn't like this, they could have overturned it. We also have other cases, not quite as directly on point as Shapiro is. We have other cases that are helpful that, where privacy statutes are being construed in this kind of context, and they're being construed in a limited way to avoid the kind of runaway liability, civil liability, and criminal liability that I've been talking about. So I think for those reasons, I think that suggests, number one, that if the legislature's going to come into play here, I think they're kind of on notice that these statutes are being read relatively narrowly, and if they want to expand that, they should act. And number two, with respect to certification, I do think that the backdrop here is that if you agree with us, you're not going to upend the status quo. If you agree with them, it's going to be a very significant upending of the status quo. So if you decide, and I hope you don't decide this, that they have the better view on your take of the statute, I think that would push you to certify. And that's why it's a little self-serving, but I think it's self-serving for a reason that's defensible under the discretionary criteria that the court applies when it's thinking about things like certification. I'd love to say a little bit more about the electronic tracking device issue, just to make sure that I get all the key points out. The legal point is really this distinction between the vehicle and something separate that is attached to the vehicle. And as I was explaining earlier, I think the something separate sort of aspect of this comes right out of the text of the statute. Here, I don't think there's any real dispute that this is a built-in component of the vehicle. If you look at what they said below, and I'd point you to SCR 9 and SCR 14. SCR 9 is their reply brief below, and I'm quoting here, the ordinary BMW driver does not know where the TCU is located. They say that. And then they say that that ordinary BMW driver wouldn't be comfortable removing the truck lining, locating the TCU underneath the trunk, and disconnecting the TCUs from the car's battery. Then they would also have to unscrew it. So this is like a component of your car that is inscrutable to normal people like me who wouldn't know how to go about disconnecting it. It'd probably be dangerous. It's connected to the battery as well, one of the other components of the vehicle. And so there's no question this is a built-in component of the device. A lot of these TCU devices today, this is outside the record, but just as a matter of sort of common sense, common knowledge, they sort of operate as the brain of the car. And they control not just the signals that are being sent that can be used for tracking, but other aspects of the car's electronic system. So it's very clearly built in. So you would agree with me that the legislative history for this particular statute was at least included discussion about private investigators who were hired probably in domestic violence and other situations the legislature is trying to prevent from people tracking whoever, other people, correct? Okay, so if a PI were to either through, vehicles at a car shop or elsewhere, put the device as part of the battery or connected in some component of the vehicle, would they then come outside the purview of this statute? I think if a PI were to sneak into the repair shop and take like a tracking device and open up the hood and like attach it to the battery, maybe in the similar place where this is attached to the battery, it would still be a separate device that's attached to the vehicle. And no one would think that it's a built-in component of the vehicle. I mean, when you have a factory installed component that's built into the car and you buy it and it comes with the car, it is part of the car. What if you replace that component itself? If you replace it? Yeah. I think if you replace the engine on a car with a new engine, it's still part of the car. It's still built into the car, even if it's like a later replacement. So I don't think that changes the analysis. Is the issue whether it happens at the factory, where's the line? You can get fancy floor mats. I mean, the fancy floor mats, like are they part of the car or not part of the car? I think the floor mat question is, I would think of a floor mat as being part of the vehicle because it comes out of the factory. I think that's arguably a harder question because it's much more common to like swap out the floor mat and get your special fancy floor mat later. Maybe you can buy it on Amazon or something. This is, I think, quite different from that. This is a much easier case. I think, you know, with respect to the TCU, it is not the kind of thing where some consumer is going and buying a new TCU, opening up the trunk of the car and sort of like swapping it out. I think this is just very squarely in the heartland of a built-in component of the vehicle. I'm just trying to figure out, if we adopt your interpretation, then it seems to me to be fairly easy for people to get around the intent, as articulated by the legislative history, for there to be tracking devices, you know, inserted as components of a vehicle, which I think everybody agrees was part of the contemplation in passing this legislation. Respectfully, Your Honor, I don't think so because I do think that what the legislature was really focused on was the kind of very targeted tracking of specific people, usually by private investigators. And as I explained in my answer to your earlier question, if you have like a private investigator who is trying to like track a specific person and sneaks into your car and puts a device like this in, that's very different from a built-in component, factory-installed component of the device. So I think that we would absolutely... Oh, counsel, you're thinking floor mats are part of the car, too. I think so, but I think the floor mats, if floor mats, you know, if we had to analyze that, I think it might be a harder question. This one is like obviously part of the car, given where it is, given how hard it is to remove, given that it's not supposed to be removed, given that it's not regularly removed. I think everyone would think of this as being built-in. And so your position is the only way the private investigator doesn't get captured is if the private investigator actually like goes to the factory and puts this in all of them or something. Even if the private investigator goes to the factory, it's not a built-in component of the car that's intended to be there. I mean, the PI sneaks into the factory and like secretly attaches the device and no one knows about it. I mean, that's a completely different scenario from this being part and parcel of the vehicle in the way that the Shapiro case described, where this is like intended to be there. And frankly, people know that it's there because everyone knows that they have GPS navigation, they have roadside assistance, et cetera. So I just think it's very different. And going back to the intent of the statute, I think when you realize that the intent of the statute is focused on this very targeted problem of tracking and especially tracking by PIs, our interpretation doesn't interfere with that. If the California legislature wants to take account of the new environment with respect to technology, if they want to update their privacy statutes to address these problems, then I think they can do that. And the evidence sort of suggests to me at least that there's no pressing need to do that or they don't see a pressing need to do that because you have this train of decisions that have interpreted this statute and similar statutes and they haven't yet acted. So I think this Court should be cognizant of that fact and should not take the, what would I think be a fairly extreme step of interpreting this statute to impose criminal liability and billions and billions of dollars of civil liability on car manufacturers and people like my clients. We've taken you over your time. Thank you.  I think we should add a couple minutes because we gave him a couple extra minutes. Let's go to four minutes, please. Okay, I appreciate that. First, I want to echo my colleague here. If you are leaning in their direction, you should definitely certify the case of the California Supreme Court. Just a few points. I think it is, actually, excuse me. First of all, let's talk about the rule of lenity. I think actually if this Court is in a position where it thinks the rule of lenity is relevant, that actually strengthens the case for certification because in that instance you have, as the California cases tell us, you have two equally reasonable readings of the statute and no real way to choose between them. And I think in that instance, right, the body that should be selecting between them is probably the California Supreme Court. Can you talk about Shapiro because I'm interested to know why we wouldn't look at Shapiro as essentially some articulation of the scope of the statute that would basically render certification unnecessary. We would just follow that. The Supreme Court has not taken Shapiro up to, you know, interpret the statute differently. So what's your position on that? So, I'm sorry to interrupt. Our read of Shapiro is that it fits with the Moreno case and the Google case. That case is about software. Also, it wasn't appealed, so the California Supreme Court didn't have the chance to take it. In fact, the word software appears in the brief in the sort of parenthetical after the Shapiro site in the defendant's brief. So we think it is factually distinguishable. My friend has described a train of decisions. I mean, we're talking about four that all come from trial courts. And the California Supreme Court and really California Courts of Appeal haven't had a whole lot of opportunities to interpret this statute. But the legislature also hasn't done anything in response to Shapiro. That is true. That is true. I have to concede that point. But I do think they are considering these issues. But to that point, right, my friend makes a point about the status quo and you would be upsetting it. I mean, let's talk about what the status quo is, right? The status quo that he describes exists because companies figured out in about 2018 when we had 4G for the first time that they could do this sort of thing. And they just barged into this space and started generating and collecting this data. And no one knew about it for several years, right? We sued in 2020. This was not a widely known thing then. The New York Times article that came out just a few months ago also was met with a bit of an uproar because people were rightly concerned that this sort of data generation and sharing was occurring. And in fact, there was a lawsuit filed in the wake of that in the Central District of California, which cites, among other things, Section 637.7. So, right, these companies, they barged into this space and are now sort of throwing a tantrum that someone's noticed what they're doing and said, hey, you know, the law might actually already apply to this behavior. So I don't really put a lot of stock in these complaints about the status quo or upsetting the status quo because I think the status quo is that this kind of conduct is unlawful unless you're getting consent, right? And that is, I think, the answer to a lot of these concerns is that all you have to do is get consent, right? That's what the statute says. And so, really, that protects against a huge swath of the problems that are imagined here. So how do you, so, I mean, what is your response to my question to the other side, then, about this, about it seems like there's a lot that could be known about consent that's either going to upset this industry or not. And we don't know at this point because we're only in your complaint. So you think there's not a big risk of letting it go forward. What they say, even with this much liability, even getting passed the motion to dismiss is a huge issue. Well, I mean, I think that's a pretty common refrain from defendants. On the liability issue, a couple of other things I would say, right, this court has said. But in this case, true, isn't it, though? I don't think we know that yet, all right? There's, district courts have tools, the tools that they need to rein in verdicts like the ones that are being imagined here if they think they are beyond the pale, if they're beyond what due process allows. So those tools exist. I think there are already constraints in the law. And back to the rule of lenity point, and this is the last thing I'll say before I wrap up, right? The California Supreme Court has said we don't apply the rule of lenity in civil cases, even under, even when they consider, concern the penal code. I think the case you cited about that was not about the rule of lenity. It was about a different kind of criminal, constitutional problem with a criminal statute. And they said we're not going to view that criminal question about whether you can extend beyond the state in the civil question about that statute. So I don't know if you have a case that says we don't look at the rule of lenity. Well, I will say that that, one of the things, and I apologize if I've misrepresented that decision, but it does say we recognize that criminal prosecutions present different concerns that are not present in civil cases, right? It does say that, but not in a rule of lenity context. So I'm not sure that we know what California does with the rule of lenity. Well, and we may not. But I think, the point I think is that all of these concerns about criminal liability, we don't necessarily, we can't say right now that they are really present in this civil case, you know, despite the protestations of the defendant here. And actually, one other thing that I want to say before I sit down, and I apologize for misrepresenting that, I think there was a line here that we don't have an account of what the car is. And to be frank, I don't really think we need one, right? Put the TCU to one side. Imagine a regular car component. Manufacturer comes up with a headrest that is location enabled, and a third party can use it to track you or I as we're driving around San Francisco. I absolutely think that this statute would require that person to get our consent before they tracked us. I don't think that is crazy at all. I don't think that's anomalous at all. And I think this contrary rule sort of invites what Your Honor got into, this sort of car of theseus analysis. And I really think there's no reason to go down that rabbit hole. This thing is attached, right? It's screwed on. It's attached, and that's really the end of the matter on that point. And do you think the steering wheel is attached? Yeah. So for you, there's no real definition of the vehicle. Any part of the vehicle could be attached to the vehicle. You just totally disagree with this concept that there's something that's the vehicle. Yeah. As I said in my opening argument, I think attached is distinguishing between basically devices that stay with you, that go with your car, your bike, or your briefcase, something like that. So what's the car? The block? What's the car? Well, the car is what's left after you detach the TCU. I think it's still there. But how do you have a car without a steering wheel? How do you still have a vehicle if you don't have the steering wheel? Well, I think my brother has an old truck that doesn't have a steering wheel. I think it's still a truck, you know. I think this sort of line drawing gets us into some really weird places, and there's just no need to do it because we know this thing is attached under very extreme... Counsel, we're in the business of line drawing. I know. I know. And I'm telling you, I think there's a different line to be drawn here than the one that has been proposed by the defendant. That's my only... Sorry, but now I don't understand what your line is. The car doesn't need to drive under your line. Well, not necessarily. But it would be difficult to track someone's movements if the car couldn't drive. But the line is between things that are attached, things that stick with the person, and things that are not attached, right? Like stingrays or thermal imaging devices, things that could be used to track you that are not attached to a vehicle or their movable object, right? Because the things that are attached represent a unique threat to privacy. I think that's the reason we have this statute. You can build... If you had a drone that could identify every BMW from the air that's tracking where the BMWs are going or the drivers are going, that would not come under the purview of the statute. That's a closer case. I mean, the drone is obviously a movable object. I think it's a closer case, but... How would it possibly be attached to the vehicle? Well, it's okay. It's not attached to a vehicle. But the thing that is doing the tracking might be attached to the drone, is my point. But I don't think... I think that's a closer case, but no, I don't think that comes under the statute. I think the legislature recognizes that these other devices represent a far more unique threat to privacy, and that's why they're regulated in the way they are. Thank you. You've given me way too much time, and I appreciate it very much. Nobody ever says that. This case is submitted.
judges: FRIEDLAND, MENDOZA, DESAI